**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DONALD R. PARTON,

    Plaintiff,

vs.                                                                                          CASE NO. 3:07-cv-063-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER AND OPINION**

    This matter is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security ("SSI") disability payments.  42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #16, "P's Brief").  Defendant filed his brief in support of the decision to deny disability benefits (Doc. #17, "D's Brief").  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated March 1, 2007 (Doc. #11).  The Commissioner has filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).  Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations.  Accordingly, the matter has been decided on the written record.  For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

In the instant action, Plaintiff protectively filed an application for DIB benefits on August 14, 2003 (Tr. 47-49), in which he alleges onset of disability on July 30, 2003. Plaintiff alleges an inability to work due to heart attack, chest pain and leg pain (Tr. 90, 92) In the Disability Report-Adult, Plaintiff stated he stopped working because of a blockage in his heart and because his doctor told him to quit working (Tr. 82A).[1]  Plaintiff also filed an application for SSI on August 6, 2003 (Tr. 4, 12).[2]

After being denied initially and upon reconsideration (Tr. 22-23, 24-25), Plaintiff requested a hearing, which was held on May 23, 2006 in Jacksonville, Florida before Administrative Law Judge ("ALJ") Stephen C. Calvarese (Tr. 312-341).  Plaintiff appeared and testified at the hearing, as did vocational expert Joanna K. Venrdercoff.  Plaintiff was 46 years old at the time of the administrative hearing.[3]  Plaintiff has a ninth grade education (Tr. 318) and prior work experience as a truck driver, material handler, retail store manager, and convenience store clerk (Tr. 82A, 17).

Plaintiff was represented by non-attorney Rick E. Gach during the underlying administrative phase of this matter (Tr. 20, 314).  On June 30, 2006, the ALJ issued a decision denying Plaintiff's claims (Tr. 9-19).  The Appeals Council ("AC") denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 5-7).

---

[1] The Court notes it is unable to find any statement by a physician of record that directs Plaintiff to quit working.

[2] Plaintiff's SSI documents are not contained within the administrative record.

[3] The record reflects Plaintiff was born January 23, 1960 (Tr. 317).

Mr. James Wilson Keeter, Esq., now represents Plaintiff in this matter. The instant action was filed in federal court on January 29, 2007 (Doc. #1, Complaint). The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND THE STANDARD OF REVIEW

A plaintiff is entitled to disability benefits when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. §§ 404.1515, 416.905.[4] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ's decision dated June 30, 2006 denied Plaintiff's claims for disability (Tr. 9-19). At Step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 13). At Step 2, the ALJ found Plaintiff had the severe

---

[4]All references to 20 C.F.R. shall be to the 2007 edition, unless otherwise noted.

combination of impairments of coronary artery disease, degenerative disc disease of the lumbar spine and major depressive disorder (Tr. 14). At Step 3, the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4 ("the Listings") (Tr.14). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work with some limitations (Tr. 15).

At Step 4, the ALJ determined that Plaintiff could not perform his past relevant work as a truck driver, material handler, retail store manager, or convenience store clerk (Tr. 17-18). Thus, the burden temporarily shifted to the Commissioner at Step 5 to determine if other work existed in significant numbers in the economy that Plaintiff could perform. The ALJ referred to the Medical-Vocational Rule 202.18 ("the GRIDS")[5] initially, but because Plaintiff had non-exertional limitations the ALJ used the testimony of a vocational expert to determine whether jobs exist that Plaintiff can perform despite his limitations (Tr. 18). By virtue of relying on the vocational expert's testimony, the ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act at Step 5 because jobs exist in the national and regional economy that Plaintiff can still perform (Tr. 19).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive

---

[5]The GRIDS are a series of rules which use a matrix of a claimant's RFC for sedentary, light, medium or heavy work and the claimant's vocational profile of his age, education and past relevant work, to direct a conclusion on the issue of whether the claimant is capable of substantial gainful activity in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00; *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983).

if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance–in other words, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; accord *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

**Plaintiff's Medical History**

Records submitted by Plaintiff indicate he was seen at Fort Sanders Regional Medical Center in Knoxville, Tennessee, in May 2002 for a wound or laceration requiring sutures (Tr. 134-37). The next medical report of record indicates Plaintiff presented to the emergency room on October 7, 2002, complaining of a stroke (Tr. 132).[6] No findings or discharge are shown on the aforementioned record; however, two days later the hospital performed carotid doppler and the radiologist reported no evidence of significant stenosis in the carotid arteries bilaterally (Tr. 129). An echocardiogram of the heart also was conducted, which showed trace mitral and trace tricuspid insufficiency (Tr. 130-31).

Plaintiff presented to the emergency room of the Putnam County Community Medical Center in Palatka, Florida on May 21, 2003, with complaints of dizziness, chest pain, and pain in his arms and legs (Tr. 192, 181-94). Plaintiff's diagnosis was vertigo and "apparent remote right caudate head infarct" (Tr. 183-84).

Plaintiff went back to the emergency room on July 30, 2003, with complaints of chest pain, and was admitted (Tr. 138-58). Enzyme tests ruled out myocardial infarction; however, after an echocardiogram Plaintiff underwent a cardiac catherization which revealed artery blockages (Tr. 133). Plaintiff was then transferred to Shands Hospital in Jacksonville, Florida where a stent was placed in his mid-right coronary artery (Tr. 195). July 30, 2003 is Plaintiff's alleged on-set date disability (Tr. 47, 319-20).

On August 26, 2003, Plaintiff reported to the Putnam County Medical Center to undergo a cardiac catheterization but, based on chest heaviness that he reported, he was admitted and given nitroglycerin, which resolved his pain (Tr. 159-62). Plaintiff was

---

[6]The report indicates a prior admission on June 23, 2002, which is not in the record.

discharged the next day to undergo a cardiac catheterization at the Putnam Heart Center (Tr. 173). After that procedure, the doctor indicated Plaintiff had a mid-right coronary artery stent with insignificant coronary artery disease in the left coronary artery and its branches (Tr. 177). There was an occluded circumflex artery in the mid-portion (Tr. 177). A stress test showed an old inferior wall infarction, inferior periinfarct ischemia, left ventricular ejection fraction, and globally hypokinetic left ventricular wall motion (Tr. 179).

On September 3, 2003, Plaintiff visited Family Medical and Dental Centers, and his exam results were normal (Tr. 196-97).

The remaining records concern Plaintiff's treatment by Dr. Goar deLamerens, who apparently first saw Plaintiff on September 26, 2003, when Plaintiff claimed to suffer from angina (Tr. 281). The next record is from four days later, on September 30, 2003, when Dr. deLamerens completed a Florida Department of Health disability form on which he noted that Plaintiff complained of chest discomfort on the left side radiating to the neck, but that the pain was relieved with nitroglycerin (Tr. 279). The doctor stated that it would be difficult for Plaintiff to lift or carry because of decreased strength (Tr. 279).

Dr. deLamerens further stated on the aforementioned form that Plaintiff does not suffer loss of motion, that he had a history of a discectomy, that his grip strength was 4/5 but otherwise within normal limits as to fine dexterity, and that Plaintiff limped when walking on his right leg (Tr. 280). The doctor also noted Plaintiff does not need an assistive device to walk and that he can walk 30 feet (the form specified that distance) without such a device (Tr. 280).

Dr. deLamerens next saw Plaintiff on October 14, 2003, for fasting blood test (the

results of which were largely normal) and office visit (Tr. 278). Plaintiff indicated he wanted to stop smoking and was instructed to do so (Tr. 277). Plaintiff was a "no show" at the next scheduled visit November 11, 2003 (Tr. 276). On April 8, 2004, Dr. deLemerens saw Plaintiff after he was admitted to Flagler Hospital for significant chest pain (Tr. 234). Plaintiff underwent a cardiac catherization and was ruled out for myocardial infarction, although some coronary artery disease was found (Tr. 218). Plaintiff was released on April 10, 2004, for medical management and was to report back to the doctor in one or two weeks (Tr. 218). Plaintiff was also instructed to follow up with Dr. Bashar Saikaly for cardiology (nothing in the record indicates Plaintiff ever did so).

According to the medical records, Plaintiff next saw Dr. deLamerens on July 8, 2004, when Plaintiff indicated he had mood swings, some good, some bad, and chest discomfort that was worse when he did not take Aciphex (Tr. 275). Dr. deLamerens' notes indicate that Plaintiff was "non compliant" in regards to quitting smoking and that Plaintiff needed to stop smoking (Tr. 275). Plaintiff was again listed as a no show on scheduled office visits on August 5, 2004 and September 9, 2004 (Tr. 273-74).

**ANALYSIS OF SPECIFIC ISSUES**

Plaintiff raises three arguments in his appeal of the Commissioner's decision: (1) the ALJ selected only evidence that supported his credibility determination without explaining why he rejected other evidence that would undermine his credibility decision; (2) the ALJ failed to mention medical evidence of the treating physician; and, (3) the ALJ failed to adequately discuss the "inconsistencies" between Plaintiff's pain testimony and the medical evidence of record or failed articulate reasons to support his credibility determination. Thus, Plaintiff claims the ALJ's decision denying his application for disability benefits was

8

not based upon substantial evidence.

Conversely, Defendant argues that the ALJ analyzed the aforementioned issues appropriately and that substantial evidence supports the ALJ's findings.

Upon review of the ALJ's decision and the record of the underlying proceedings, including the record evidence submitted by Plaintiff, the Court finds substantial evidence supports the ALJ's findings and the ALJ's ultimate determination that Plaintiff was not disabled under the Social Security Act.  Moreover, the Court finds the ALJ's decision was made in accordance with the proper legal standards.

**Inadequate Consideration of the Evidence**

Plaintiff's first argument is simply without merit.  A careful reading of the ALJ's decision and the transcript of the underlying administrative hearing reveals the ALJ considered all the record evidence.  The ALJ referenced Plaintiff's medical history, including his heart attack, coronary artery disease, history of stroke, emphysema, history of back surgery, arthritis, depression and anxiety, and he discussed in some detail the complaints and claimed limitations Plaintiff described at the hearing (Tr. 15).  The ALJ also discussed the findings of the reviewing and consulting physicians and psychologists (Tr. 16-17).

During the course of the administrative hearing, the ALJ questioned Plaintiff about his impairments and the treating relationship with his doctors (Tr. 322-23).  None of the medical sources of record, including Plaintiff's named treating physician and the reviewing and examining physicians and psychologists, found any reasons for the degree of limitation claimed by Plaintiff.

An independent review of the medical records does not support Plaintiff's claimed

limitations. As discussed more fully below, Plaintiff's counsel fails to cite evidence other than Plaintiff's testimony which would contradict the ALJ's credibility determination. The Court finds the ALJ did not err in failing to properly consider all the evidence, both in favor of and contrary to Plaintiff's assertions of a disabling condition.

**Treating Physician's Opinion**

As to Plaintiff's second argument, Plaintiff is correct that the ALJ failed to explicitly discuss in his decision the records and the opinion of Plaintiff's treating physician, Dr. deLamerens (Tr. 273-281),(Tr. 9-19). Typically, that fact alone could be cause for remand. However, the Court does not find remand is warranted under the facts of this case because the ALJ's failure to address Plaintiff's treating physician's opinion was harmless error.

The opinions and diagnosis of a treating physician are entitled to special deference under the Regulations and the law in this circuit. Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583.

In this case, the Court's independent examination of the reports of Dr. deLarmerens

reveals they do not support Plaintiff's claims of debilitating pain. Dr. deLarmerens' notes (Tr. 273-81) do not reflect that he placed any limitations on Plaintiff, other than noting he might have difficulty lifting or carrying because of decreased strength (Tr. 279).

At the hearing, Plaintiff's representative stated in response to a question from the ALJ that there were no physician restrictions in the file (Tr. 342). The Court notes the submitted medical evidence indicates Plaintiff saw his named treating physician only four times during a twelve month period. Although Plaintiff made complaints of pain during his few visits with Dr. deLarmerens, nothing in the doctor's notes provides support for Plaintiff's claims of disabling pain or physical limitations beyond what the ALJ found. The ALJ referenced at the hearing that he had read the entire record of exhibits presented, Exhibits 1A through 17F, plus 12E presented that morning (Tr. 314).

At the hearing, Plaintiff's non-attorney representative asked Plaintiff about doctors he was seeing and Plaintiff mentioned he was seeing Dr. Vesti and Dr. deLamerens (Tr. 322). The representative asked what type of treatment he was receiving from his doctors, and Plaintiff stated, "[they] [j]ust ask me how I'm doing, and that's basically about it." (Tr. 322). Plaintiff added that his doctors give him samples of medications because he cannot afford to buy them (Tr. 323).

If an ALJ finds reason to discount a treating physicians opinion, he must articulate explicit reasons for doing so. *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004). In this case, there was no reason to discount the opinion of Dr. deLamerens, as his opinion is in accord with the other evidence of record. If a reviewing court is unable to ascertain what, if any, weight was given to the opinion of a treating physician, normally the case must be remanded for clarification and additional proceedings. *See Wiggins v. Schweiker*, 679

11

F.2d 1387, 1390 (11th Cir. 1982). However, in this instance, even giving controlling weight to the opinion evidence of Dr. deLemerans would not change the result because his findings are not contrary to the findings of the other doctors cited by the ALJ.

Thus, even though the ALJ should have specifically discussed Dr. deLamerens' records and opinion, on the facts limited to this case, the Court does not find that his failure to do so subtracts from the substantial evidence in the case. For instance, in *Heston v. Commissioner of Social Security*, 245 F.3d 528 (6th Cir. 2001), the court found that the ALJ's failure to discuss a physician's opinion constituted harmless error where the ALJ had assessed the claimant limitations that were consistent with the treating physician's opinion. There is no reason to believe in this case that having the ALJ discuss Dr. deLamerens' treatment notes would change the ALJ's assessment of Plaintiff's RFC or Plaintiff's credibility.

**Determination of Plaintiff's Credibility**

Lastly, Plaintiff complains that the ALJ did not properly explain the inconsistencies between Plaintiff's testimony and the medical evidence of record when he did not give full credit to Plaintiff's pain testimony. Under the law of this circuit, when an ALJ decides not to credit a claimant's pain testimony, he must articulate explicit and adequate reasons for doing so. *Foote,* 67 F.3d at1560. "The ALJ must either explicitly discredit such [pain] testimony or the implication must be so clear as to amount to a specific credibility finding." *Cannon v. Bowen*, 858 F.2d 1541, 1555 (11th Cir. 1988).

In this circuit, the two-part analysis for evaluating a claimant's subjective complaints of pain is as follows: first, there must be evidence of an underlying medical condition; and, second, there must be objective medical evidence confirming the severity of the alleged

pain or evidence that the determined medical condition is of a severity which can reasonably be expected to give rise to the degree of pain alleged. *Allen v. Sullivan,* 880 F.2d 1200, 1202 (11th Cir. 1989); *Landry v. Heckler*, 782 F.2d 1551, 1552-3 (11th Cir. 1986). Where an ALJ has cited at least three reasons for discrediting a plaintiff's complaints of pain, the Eleventh Circuit has affirmed. *Allen,* 880 F.2d 1200.

In the instant case, the ALJ found the Plaintiff's testimony credible to the extent Plaintiff claimed back pain and shortness of breath upon heavy exertion, and crafted Plaintiff's RFC accordingly. The ALJ, however, found Plaintiff's complaints that he could not perform any work activity "not credible due to significant inconsistencies in the record" (Tr. 17). In support of this finding, the ALJ refers specifically to the medical reports and opinions of three examining doctors and three medical reviewers (Tr. 17).

Therefore, the Court will examine the reports of the aforementioned doctors and determine whether the findings contained within the reports support the ALJ's claim that the reports are inconsistent with Plaintiff's complaints of disabling pain.

Plaintiff was examined by consulting physician, Dr. Lance Chodosh, on April 28, 2004 (Tr. 237-42). Dr. Chodosh reported that Plaintiff claimed to have left chest pain, which occurred more when Plaintiff gets overheated. Dr. Chodosh additionally reported that nitroglycerin helped relieve Plaintiff's discomfort (Tr. 237). Dr. Chodosh noted one stent has been placed in Plaintiff's coronary artery, and that Plaintiff has been told he has three partial blockages (Tr. 237). Dr. Chodosh additionally noted history of a prior stroke that was determined by a CT scan in 2001, and lumbar spinal surgery in either 1996 or 1997 (Tr. 237). Plaintiff reported to Dr. Chodosh that he is generally independent in activities of daily living, that his ability to walk varies because of breathing problems and

13

leg pain, that he has difficulty raising from a squat, and that he avoids lifting and carrying more than 20 pounds (Tr. 238).

Dr. Chodosh found all of Plaintiff's joints had full range of motion and motor function was normal in all four extremities, with strength at 5/5 throughout, including grips and manual dexterity was normal (Tr. 238-42). Additionally, Dr. Chodosh concluded that Plaintiff could walk and stand to at least a moderate extent, sit in a normal fashion, bend at least occasionally, probably could squat and kneel occasionally, lift and carry moderate weights and comprehend and follow directions, and relate normally to others (Tr. 240).

A second consultive examination was performed by Dr. Robert A. Greenberg on December 10, 2004 (Tr. 282-85). Dr. Greenberg reported decreased range of motion of both hips, but other extremities had full range of motion, decreased right leg strength measuring 4/5, but no other motor or reflex abnormalities (Tr. 282-83). He noted Plaintiff walked with a right leg limp, but did not require assistive device (Tr. 283). Grip strength and fine manipulation were normal and repetitive muscle testing did not reproduce fatigue (Tr. 283). Dr. Greenberg additionally found no clinical signs of congestive heart failure or significant respiratory impairment, and that a mental status examination appeared to be normal (Tr. 283).

On December 30, 2004, DDS physician, Dr. Puestow, completed a physical residual functional capacity assessment after reviewing Plaintiff's file (Tr. 290-97). He found Plaintiff could occasionally lift 20 pounds and lift 10 pounds frequently, stand and sit each for about six hours in an eight-hour day, and perform unlimited pushing and pulling (Tr. 291). He indicated Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl, and not no manipulative limitations (Tr. 292-93). In his typed notes he found the Plaintiff's

14

abilities consistent with light work with postural limitations (Tr. 295).

Dr. Nicholas H. Bancks, certified radiologist, completed a physical residual functional capacity assessment July 8, 2004 (Tr. 265-72) in which he found Plaintiff could sit and stand each for about six hours in an eight-hour day, occasionally lift 20 pounds and frequently lift 10 pounds, and was unlimited in his ability to push and pull (Tr. 266). Dr. Bancks found Plaintiff could only occasionally climb, balance, stoop, kneel, crouch or crawl (Tr. 267). Dr. Bancks additionally found Plaintiff had no manipulative, visual or communicative limitations (Tr. 268-69), but should avoid concentrated exposure to machinery or heights (Tr. 269).

Concerning Plaintiff's mental impairments, Dr. Andres Nazario Jr., a licensed psychologist, examined Plaintiff on December 9, 2004 (Tr. 286-89). Plaintiff reported no history of mental illness, but acknowledged he had been depressed since his heart attack in 2003 (Tr. 287). Plaintiff indicated he used to be "laid back" but now gets angry every day (Tr. 287). Plaintiff reported that his daily activities consisted of going outside and piddling with cars, doing a little body work, picks up trash in the yard, watches television and doodles (Tr. 287-88). Plaintiff claims to sleep well only for a couple of hours at night before waking up (Tr. 287). Dr. Nazario diagnosed Plaintiff with an adjustment disorder, mixed anxiety and depressed mood secondary to his medical condition (Tr. 289). Dr. Nazario found Plaintiff's emotional difficulties were not severe enough to preclude employment and that Plaintiff could concentrate, understand, follow directions, and interact appropriately with others (Tr. 289).

Dr. Louis Legum, licensed psychologist, evaluated Plaintiff on April 30, 2004, in connection with his disability claim (Tr. 243-46). Plaintiff reported that during the day he

moves around the house doing small jobs, sits and watches television and sleeps (Tr. 244). At night, Plaintiff claimed only two sleep for about two hours (Tr. 244). Because there is history of stroke and heart problems in his family, he fears his health problems (Tr. 244) and feels he is repeating his family's story (Tr. 245). Dr. Legum indicated Plaintiff had not reached a psychotic stage, but may make that leap in the future (Tr. 245). The doctor diagnosed Plaintiff with major depressive disorder, severe and relative to general medical condition (Tr. 246).

On June 2, 2004, Dr. Mark A. Williams, clinical psychologist, completed a psychiatric review technique (Tr. 247-60) and a mental residual functional capacity assessment (Tr. 261-64). He noted depression and anxiety as medical impairments (Tr. 250, 252), and rated Plaintiff as having mild restriction in activities of daily living, moderate difficulty in maintaining social functioning, moderate difficulty in maintaining concentration, persistence and pace, and found no episodes of decompensation (Tr. 257). Dr. Williams ultimately found Plaintiff was not unable to work because of mental problems (Tr. 259).

In his functional capacity assessment, Dr. Williams found no significant limitations, indicating Plaintiff could carry out simple tasks and familiar detailed tasks, complete an eight-hour work day, work with public and co-workers, and accept non-threatening supervision (Tr. 263). Dr. Williams stated Plaintiff's work demands should be mostly routine (Tr. 263).

The ALJ stated he attached "great weight to the medical reports and opinions of Dr. Williams, Dr. Bancks and Dr. Puestow as they are supported by the evidence including the examinations of Dr. Chodosh, Dr. Legum and Dr. Greenberg." (Tr. 17). The ALJ did not mention Dr. Nazario in that sentence, although he had cited Dr. Nazario's conclusion that

Plaintiff was not precluded from work in a prior paragraph (Tr. 17).

Thus, the ALJ cited the opinions of six doctors, none of whom agreed with Plaintiff's claims that he could not work because of disabling pain and physical restrictions. The ALJ used the findings of the aforementioned doctors in reducing Plaintiff's RFC to light work, with occasional lifting of up to 20 pounds and frequent lifting of up to 10 pounds. The ALJ found Plaintiff could stand or walk and also sit for up to six hours in an eight-hour work day, and that he could only occasional stoop, crouch, crawl, kneel, balance and climb stairs, and never climb ladders. The ALJ also found Plaintiff must avoid heights and moving machinery. Lastly, the ALJ included in the RFC that Plaintiff had moderate limitations to his ability to understand, remember and carry out detailed instructions, and moderate limitations in his ability to interact with the general public, accept instructions from supervisors and set goals (Tr. 15).

In answering the ALJ's questions based on a hypothetical individual with Plaintiff's RFC, a vocational expert testified that there were numerous jobs in the national and local economy that the hypothetical individual could perform. Specifically, the vocational expert testified that the hypothetical individual could perform the occupations of ticket seller, agricultural sorter, hand packager and surveillance system monitor (Tr. 18, 342). The Court notes Plaintiff's representative acknowledged there were no physician restrictions contained within the submitted record (Tr. 342).

Thus, even though it would have been preferable for the ALJ to spell out all of the inconsistencies between Plaintiff's testimony and the medical record in his decision, the implication of them is clear by his citing to the reports of the six doctors, whose opinions do not support Plaintiff's contention that he is completely unable to be gainfully employed.

The Court finds there is substantial evidence in the record to support the ALJ's finding in this regard. The Court also notes that, although the hearing was on May 23, 2006 (Tr. 314), there are no treating physician records in the record after July 8, 2004 (Tr. 275).

Although it is possible for an ALJ to determine pain and subjective symptoms alone may be impairments that result in a claimant being found disabled (*Marbury v. Sullivan*, 957 F. 2d 837, 839 (11th Cir. 1992)), the ALJ is not bound to do so. Here, the doctors of record did not report objective medical evidence confirming the severity of Plaintiff's pain. Indeed, there was no medical records showing Plaintiff had even sought treatment for 18 months prior to the hearing. A reviewing court decides whether the Commissioner's findings are consistent with the proper legal standard and are supported by substantial evidence. *Bridges v. Bowen*, 815 F. 2d 622, 624-25 (11th Cir. 1987).

While an ALJ must consider a plaintiff's subjective testimony of pain that restricts his/her ability to work, the ALJ may reject the testimony as not credible and such a determination will be reviewed under the substantial evidence standard. *Marbury*, 957 F.2d at 839. Furthermore, the ALJ's determinations as to the credibility of a plaintiff will not be overturned if, reviewing the entirety of the record, there is substantial evidence supporting a finding of non-credibility. *See Foote*, 67 F. 3d at 1562.

The ALJ must consider the medical evidence of record when assessing Plaintiff's testimony as to the severity of his or her alleged pain and the limitations resulting from that pain 20 C.F.R. §§ 404.1529, 416.929(c). Here, the Court finds the ALJ properly contrasted Plaintiff's medical record with the severity of his alleged limitations.

The burden of proving an alleged disability remains with the Plaintiff throughout the five step sequential evaluation process, only temporarily shifting to the Commissioner at

step five to show the existence of other jobs in the national economy which the party seeking disability benefits could perform given that party's impairments. *Bowen*, 482 U.S. at 146; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). As in all Social Security disability cases, Plaintiff is responsible for furnishing or identifying medical and other evidence regarding her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also*, 20 C.F.R. §§ 404.1512, 416.912 (it is the claimant's burden to furnish the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations). As stated in *Bowen*, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." 482 U.S. at 146, n. 5.

## CONCLUSION

For the foregoing reasons, the undersigned finds the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence. The Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this Order and Opinion and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 31st day of March, 2008.

                                          */s/ Thomas E. Morris*
                                          **THOMAS E. MORRIS**
                                          United States Magistrate Judge

Copies to all counsel of record
    and *pro se* parties, if any